# OHIO NISI PRIUS REPORTS

## NEW SERIES—VOLUME XVI.

---

CAUSES ARGUED AND DETERMINED IN THE SUPERIOR,
COMMON PLEAS, PROBATE AND INSOLVENCY
COURTS OF OHIO.

---

### MUNICIPAL REGULATION OF BILL-BOARDS.

Common Pleas Court of Hamilton County.

STATE OF OHIO, EX REL PHILIP MORTON, v. GEORGE W. RAPP, COM-
MISSIONER OF BUILDINGS; AND STATE OF OHIO, EX REL
CINCINNATI BILL POSTING CO., v. GEORGE W.
RAPP, COMMISSIONER OF BUILDINGS.

Decided, January 5, 1914.

*Bill-Board Ordinances—Proper Test for Determining Their Validity—
Protection of the Rights of Property Owners—Police Requirements
Which Are Reasonable and Valid—Requirements Which Are Found-
ed on Aesthetic Ideas Not Enforcible.*

1. The proper test as to the validity of a bill-board ordinance, or the ex-
tent to which such an ordinance is valid, is found in the funda-
mental principle that private property must ever be held inviolate,
except in so far as it may be subject to the police power exercised
for the health, morals and safety of the community.
2. It is a reasonable exercise of the police power to provide by ordi-
nance with reference to bill-boards; that there shall be an open
space of six feet between each bill-board and any adjoining structure
or lot line; that there shall be an open space of at least two feet
between any two bill-boards; and that no bill-board shall exceed
five hundred square feet in area.

3. But it is not a reasonable exercise of the police power to provide that no bill-board shall be nearer to the lot line or any street than the house adjoining the same; or that in no case shall any bill-board be less than fifteen feet from the street line or that no such sign or bill-board shall be erected facing any public park, square, municipal, county or federal building unless a special permit shall have first been issued by the director of public service.

4. While an ordinance relating to bill-boards is without retroactive effect, the building commissioner, in ordering that a board which has been erected within the street line shall be removed, may require that if the board is re-erected within the lot line, the work must be done in such a manner as to conform to valid ordinances in force at the time of its re-erection.

*Alfred Bettman,* City Solicitor, counsel for the state, cited the following: Graves & Cusack v. Cincinnati, 9 N.P.(N.S.), 466; Minter v. Bradstreet Co., 174 Mo., 444; Campbell v. Nonpareil Co., 75 Va., 192; Stewart v. Vandevort, 34 W. Va., 524; Walcutt v. City of Columbus, 27 C. C., 238; Van Fleet v. Van Fleet, 49 Mich., 610; Cranor v. School District, 151 Mo., 119; Rogers v. Lynch, 44 W. Va., 94; Wright v. Southern Ry. Co., 80 Fed. Rep., 260; State v. Towery, 143 Ala., 48; Central R. R. v. State, 104 Ga., 831; McFarland v. Donaldson, 157 Ga., 567; Barker v. State, 118 Ga., 35; 2 Dillon on Municipal Corporations, 5th Ed., 591; Gunning v. St. Louis, 127 S. W. Rep., 929; Ex parte Savage, 141 S. W. Rep., 244; In re Wilshire, 103 Fed. Rep., 620; Section 3537, General Code.

*Millard Tyree,* counsel for relators, cited: Crawford v. Topeka, 51 Kan., 756; Yates v. Milwaukee, 10 Wall., 487; 1 Dillon on Municipal Corporations, 374; People v. Green, 85 N. Y. (App. Div.), 400; Bill Posting Co. v. Atlantic City, 71 N. J. L., 72; Passaic v. Patterson Bill Posting Co., 72 N. J. L., 285; Bryon v. Chester, 212 Pa., 259; Commonwealth v. Boston Advertising Co., 188 Mass., 384; State v. Whitlock, 149 N. C., 543; Varney & Green v. Williams, 155 Cal., 318; People v. Murphy, 195 N. Y., 126; Curron Co. v. Denver, 47 Colo., 221; Chicago v. Gunning System, 213 Ill., 623 (affirming 114 Ill. App., 377); Haller Sign Works v. Physical Culture Training School, 249 Ill., 436; Mugler v. Kansas, 123 U. S., 661; Austin v. Murry, 16 Pick. (33 Mass.), 126; St. Louis v. Hill, 116 Mo., 527; St. Louis v.

Gunning Co., 137 S. W. R., 929, and the dissenting opinion of Graves, J.

GEOGHEGAN, J.

The first cause as well as a number of others involve in the main the same principles and will therefore be considered together. The second case involves somewhat different principles and will be considered separately.

The relators in each case seek to compel the defendant to issue to them permits to erect certain bill-boards which they claim comply with the ordinance of the city of Cincinnati commonly known as the building code, except as to certain provisions thereof which the relators claim are unreasonable and void and contrary to their constitutional rights in their enjoyment of their property. The sub-sections of the ordinance about which they complain as sub-sections (e), (f), (g), (h) and (i) of Section 455 of the Building Code. which read as follows:

(e) "There shall be an open space of six (6) feet between each bill-board and any adjoining structure or lot line."

(f) "There shall be an open space of not less than two (2) feet between any two bill-boards."

(g) "No bill-board shall exceed five hundred (500) square feet in area."

(h) "No bill-board shall be nearer to the lot line on any street than the house adjoining the same."

(i) "In no case shall any bill-board be less than fifteen (15) feet from such street line."

Sub-section (s) under Section 455 provides:

"Each of the foregoing lettered sections relating to signs and bill-boards is hereby declared to be independent of every other section and the invalidity of any one shall not invalidate any of the others."

In the consideration of the propositions involved in these cases I have made an exhaustive examination of all the authorities presented in the able briefs for the relators and of counsel for the city. It would not be profitable, however, in this opinion

to comment upon them or cite them. The judicial literature upon the subject of bill-board ordinances has grown apace in this country within the past few years, and any one who desires to read the various conflicting views that have been expressed upon the subject may find some reward for his industry in the examination of the cases which are appended to this opinion.

The cardinal principle of construction involved herein is that private property shall ever be held inviolate but subservient to the public welfare, and the public welfare is protected by the exercise of the police power reposed in each state when such police power is exercised for the benefit of the health, morals or safety of the community and in the conservation of the general welfare. In so far as the aforesaid sections are necessary in their restrictions for the safety, health and morals of the community, they are valid. In so far as they are not necessary for this purpose, they are invalid. In order to determine, therefore, whether they come within or without the pale of these rules their reasonableness in view of the general welfare must be inquired into.

In my opinion sub-section (e) requiring an open space of six feet between each bill-board and any adjoining structure or lot line is a reasonable exercise of the police power of the state. The authorities have all recognized the right of the state, or the municipality acting under authority granted by the state, or in its own inherent right, to adopt such regulatory measures as will prevent the inception and progress of fires, the abatement of nuisances and such other things as conduce to the public health, safety and morals. Now it is a matter of common knowledge that bill-boards erected entirely across vacant lots, and covering the entire space of said lots, are dangerous in time of fire in preventing egress and ingress of persons trying to reach adjoining buildings, and further, they are not conducive to public health and morals, in that by so enclosing a lot, they furnish a refuge for the vicious and immoral. This regulation does not unreasonably restrict the use of property, but allows the property to be used for any purpose that the owner desires,

even in the erection of a so-called bill-board so long as the bill-board is not so constructed as to entirely cover the frontage of the lot. It is true that in the enforcement of this restriction the space for the erection of bill-boards may be confined to very narrow limits, but the property owner still has the right to use the property for the erection of a bill-board, the difference in degree not being a matter of concern in the eye of the law. Whatever doubt one may have as to the reasonableness of this provision, that doubt should be resolved in favor of the law rather than against it. I am therefore of the opinion that sub-section (e) is not so unreasonable in its operation as to unduly infringe upon the property rights of the owner of the property.

Sub-section (f) provides that there shall be an open space of not less than two feet between any two billboards. The same reasons that impel me to declare sub-section (e) to be a reasonable restriction will be equally applicable to sub-section (f), together with the additional fact that a space between separate bill-boards for ready access to the police or fire departments to locations behind bill-boards are conducive to the public safety and morals, which access would be prevented by a long unbroken line of bill-boards or fences.

Sub-section (g) provides that no bill-board shall exceed more than five hundred square feet in area. This I regard as a reasonable restriction. In the first place, to permit a bill-board to be extended for great distances would be interfering with the access of the police and fire departments referred to above. In the second place, the restrictions as to size, character and construction of buildings have been uniformly regarded as within the proper province of the police power of the state, and as long as the restrictions are reasonable it is not within the jurisdiction of courts to interfere with their exercise. It does not seem to me that this provision, which in the light of other provisions of the ordinance, allows a board at least fifty feet long, is so unreasonable as to render it void as being an invasion of the constitutional rights of the owner.

Sub-section (h) provides that no bill-board shall be nearer to the lot line on any street than the house line adjoining the

same. To my mind this provision is clearly unconstitutional. I can not conceive of any fact or state of facts that would make this restriction necessary in the exercise of the proper police power of the state. It seems to have been drafted purely with an eye to the the aesthic and to preserve a continuity of bill-boards on the front line of house upon the same street. The only advantage that can be gained by such a provision is the advantage to the adjoining property owner in not having an adjoining bill-board placed out further than he desires to place the front line of his house. In other words, it compels a man erecting a fence or bill-board to do it where his neighbor dictates. This is entirely contrary to the doctrine laid down in *Letts* v. *Kessler*, 54 Ohio St., 73, which in effect holds that a man may build a fence where he likes, from motives of unmixed malice and with entire disregard of the feelings of his neighbor.

Sub-section (i) provides that in no case shall any bill-board be less than fifteen feet from such street line. My colleague, Judge Dickson, passed upon this provision on January 20, 1913, in the case of *State of Ohio, ex rel,* v. *Rapp,* 14 N.P. (N.S.), 126. I am entirely in accord with the views that he expressed in discussing this very same proposition, and therefore hold with him that the only design of such a restriction is to beautify the community at the expense of the property owners' rights rather than to promote the public health, safety or morals, in the proper exercise of the police power of the state.

I am well aware of the fact that a great many good people throughout the United States have been endeavoring for years to ameliorate the unsightly conditions caused by the indiscriminate erection of so-called bill-boards. However, when the question of constitutional rights of property are involved these rights can not be determined upon purely aesthetic grounds. Under our Constitution each individual is permitted in, so far as the single question of the city beautiful is concerned, to adopt what is dictated by his own good taste and sense of the beautiful. If individuals allow their public spirit to be overcome by their desire for gain, legislative bodies can not restrain them, except in so far as the public welfare, as determined by the cardinal principles spoken of above, is subserved.

Therefore, the demurrers filed by the city to the application for writs of mandamus in the various cases will be sustained, it appearing upon the face of the petition that the building commissioner properly refused to grant the permits applied for because of the fact that in each instance the proposed construction violated one or the other of the restrictive provisions of the ordinance hereinbefore found to be valid and reasonable.

The cases are numbered on the docket of this court as Nos. 154437, 154438, 154439, 154440, 154441, 154442, 154443, and 154444.

Coming now to consider the principles involved in case No. 154322, the petition recites that for many years prior to the enactment of any ordinance providing for permits for erecting bill-boards, relator's predecessor in title maintained a bill-board about 180 feet long by 10 feet in height facing Central avenue in the city of Cincinnati, and 80 feet long by 10 feet in height, facing Eighth street, said bill-boards being at the intersection of said two streets and forming one continuous board; that said bill-board was built about ten inches beyond the lot line and in the street or sidewalk; that the relator was notified to take same off of the streets of the city; that it applied for a permit to remove it over and set it back off of the city's property, but that the building commissioner refused to grant the permit unless in its removal and subsequent erection it was erected so as to comply with the provisions of the building code, some of which have heretofore been referred to. He further recites that in removing said board it will not be necessary to demolish it, but that it can be moved back intact by simply excavating back of all the upright supports to such a distance as is necessary to place it off of the city's property.

On June 10, 1913, the city of Cincinnati passed an ordinance providing in effect that where any one desires to move a bill-board he shall obtain a permit to do so, and this permit shall only be granted upon the condition that the relocated board shall comply with the provisions of the ordinance relating to the construction and maintenance of bill-boards.

Now to me, there seems to be nothing unreasonable about this provision with reference to the relocation of bill-boards.

State, ex rel, v. Rapp.        [Vol. 16 (N.S.)

Certainly when one considers the familiar legislation with reference to the blocking of squares it would seem that an owner would not have a right to remove a frame structure from one lot in a place where frame structures might be permitted, to a place where, under the exercise of the police power the legislative body of the municipality has declared that wooden structures shall not be allowed. The city certainly has the right to order the removal of structures that are being maintained without right upon its property, and it has a right to provide that in the relocation of bill-boards the ordinance relating to the construction and maintenance of bill-boards in so far as it is valid, shall be complied with. There does not seem to me to be any vested right in an owner to keep a bill-board intact, no matter to what place he desires to remove it. While it may be true that the ordinance providing for the erection of bill-boards has no retroactive effect, I do not think that this doctrine can be extended so far as to apply to a bill-board previously erected, when there is a desire or necessity of removing it to some other place. To hold otherwise would defeat, to a very appreciable degree if not entirely, the valid provisions of the bill-board ordinance itself, and practically render them nugatory.

It also appears from the petition that this bill-board, as proposed to be relocated, will violate sub-section (i) which reads as follows:

"No such sign or bill-board shall be erected on or facing any public park, square, municipal, county, or federal building, unless a special permit shall have first been issued by the director of public service."

This bill-board on the Eighth street side faces the city building; however, the invalidity of this provision is apparent upon the mere reading of it. It can not be said that it in any way affects the general welfare or public safety, health or morals to have a bill-board facing the public places described in the sub-section. This sub-section must have been framed and passed from purely aesthetic reasons and is therefore invalid.

Therefore, in so far as the application to remove the bill-board did not contain specifications in accord with the valid provisions

of the so-called bill-board ordinance, the building commissioner was right in refusing to grant the permit, and the fact that the said specifications did not in certain instances comply with the valid provisions of the ordinance appearing upon the face of the petition, the demurrer will be sustained.

Counsel will prepare orders in conformity with the foregoing findings.